**LODGE NO. 12, DISTRICT NO. 37, INTERNATIONAL ASSOCIATION OF MACHINISTS, Plaintiff,**

**v.**

**CAMERON IRON WORKS, INC., Defendant.**

**Civ. A. No. 11046.**

United States District Court
S. D. Texas,
Houston Division.
April 12, 1960.

organization representing employees in an industry affecting commerce, pursuant to Section 301 of the Labor Management Relations Act of 1947, Title 29, U.S.C.A. § 185. Plaintiff seeks specific performance of an alleged agreement to arbitrate a grievance arising out of the discharge of certain employees, members of plaintiff, for alleged misconduct in connection with a strike. The case was tried before the court without a jury and is submitted for judgment upon the briefs of the parties.

Plaintiff and defendant are parties to a collective bargaining contract within the purview of the National Labor Relations Act, Title 29 U.S.C.A. § 151 et seq. The contract was effective for a two-year period from June 1, 1956, through May 31, 1958, and included a renewal provision. Under the terms of the contract, the right to employ and discharge employees, while vested exclusively in defendant, is subject to certain limitations, one being that a discharge may constitute a "grievance". A "grievance procedure" is specified for *any* difference arising between defendant and any employee as to the meaning, application or interpretation of the contract; an unsettled grievance may be submitted to arbitration. Article V, Section 2, of the contract states:

> "The Board of Arbitration shall render a decision within fifteen (15) days from the date the hearing is completed. The terms and conditions of the settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; provided, however, the Board shall have no authority to violate, contravene, disregard or supplement the terms of this agreement."

The contract contains a "wage reopening clause" which states that the question of wages can be reopened by either party once a year upon giving thirty days' written notice to the other, and if no agreement is reached within sixty

Dixie & Schulman, Chris Dixie, Houston, Tex., for plaintiff.

Vinson, Elkins, Weems & Searls, Leroy Jeffers, and Fouts, Moore, Williams & Caldwell, Joseph W. Moore, Houston, Tex., for defendant.

INGRAHAM, District Judge.

Suit for violation of a contract between defendant employer and plaintiff labor

days after the notice, any strike limitation on plaintiff terminates.

Plaintiff reopened the question of wages under the "wage reopening clause" and, after reaching no agreement, effected a strike on April 29, 1957. The strike ended on June 8, 1957, with a settlement of a three cent per hour wage increase. The settlement agreement was in the form of a letter from defendant accepted by plaintiff. The last paragraph of this letter states:

"*Strikers who are lawfully entitled to reinstatement* shall be reinstated to their respective jobs as rapidly as an orderly and economic readjustment of plant operations will permit, and in any event in not more than thirty (30) days from the date the strike is discontinued. Reinstatement notices will be mailed to the last known address of striking employees. Employees who do not report for duty, or submit a valid reason for not reporting, within five (5) days after reinstatement notice is mailed shall forfeit any right to reinstatement. These provisions shall not in any way prejudice the right of the company to reduce the working force." (Emphasis supplied.)

Upon termination of the strike fifteen employees, members of plaintiff, were discharged or were refused reinstatement because of "strike misconduct". Plaintiff demanded arbitration of the discharge of or refusal to reinstate the fifteen employees and, upon refusal by defendant, brought this action to compel arbitration under the contract. This court granted defendant's motion for summary judgment on the ground that the arbitration provisions of the contract were in no way applicable to the matter of discharging or refusing to reinstate the fifteen employees released for misconduct during the strike. Plaintiff stated its points on appeal to be the alleged error of the court in granting said motion and in overruling plaintiff's motion for summary judgment, which sought arbitration on the basis of the pleadings and the contract. Our court of appeals reversed and remanded the case, as reported at 257 F.2d 467, 468, certiorari denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110.

The court of appeals expressly stated that grievances arising from discharges may be arbitrated under specific terms of the contract and also under the general provision that "any difference" arising "between the Company and any employee as to the meaning, application or interpretation of the [provisions]" of the contract may constitute a grievance and, if not settled, may be arbitrated. It held that the contract was not intended to cover only normal operations free from strike and that the striking employees were in the employ of the company. Citing the preamble as implying "a broader, even an inclusive coverage", the court stated:

"We cannot interpret the contract to say that grievances arising from a discharge of employees for strike misconduct, where the employees were striking under the terms of the contract, would be impliedly excluded from arbitration. *Neither did the settlement memorandum impliedly exclude from arbitration any arbitrable matter in the contract.* The question of which strikers are 'lawfully entitled to reinstatement' must be considered an arbitrable matter rather than left to the unilateral determination of the Company in order to preserve the terms of the contract relating to seniority, retirement, etc., and to carry out its general intent and purpose." (Emphasis supplied.)

Upon remand defendant filed a first amended original answer, alleging that during the negotiations for settlement of the strike leading to the execution of the settlement memorandum plaintiff proposed that the discharge of employees for alleged strike misconduct should be subject to review and adjudication through the grievance and arbitration procedure under Articles IV and V of the contract and that the settlement

memorandum should so provide. Defendant contends that it expressly refused to agree to plaintiff's said proposal or to incorporate the proposed provision in the settlement memorandum. It would show that plaintiff and defendant executed the settlement memorandum without any such provision and, accordingly, that under the settlement and intentions of the parties the discharge of employees was not subject to the grievance and arbitration procedure of the collective bargaining contract.

Defendant contends that plaintiff is not entitled to judgment on the face of the pleadings, the collective bargaining contract, and the settlement memorandum. It maintains that plaintiff took the same position on the prior appeal and that the court of appeals necessarily overruled this contention when it reversed and remanded the cause instead of reversing and rendering judgment in plaintiff's favor. It claims that this is the same position taken by plaintiff on resubmission of its motion for summary judgment after remand of the cause on the prior appeal. This court overruled this contention, it argues, by denying the motion for summary judgment and holding that there were fact issues to be determined.

Plaintiff contends that the discharge of employees for alleged strike misconduct is arbitrable under the terms of the contract, as found by the court of appeals, that the collective bargaining contract, effective for a two-year period from June 1, 1956, through May 31, 1958, was binding on the parties at the time of the strike settlement negotiations in June 1957, and that the parties did not abrogate, amend, or destroy said contract orally or in writing with regard to arbitration of the discharge of these employees. It maintains that defendant was not asking plaintiff to agree to anything concerning the strike misconduct cases, that it did not negotiate or agree to change any subject in the basic contract other than the matter of wages, that it claimed rights under the grievance and arbitration procedure for these employees, and that defendant did not flatly refuse to arbitrate.

The court does not consider itself precluded from ruling in favor of plaintiff by its denial of plaintiff's resubmitted motion for summary judgment or by the court of appeals' alleged denial of plaintiff's prior motion for summary judgment. In denying plaintiff's resubmitted motion for summary judgment the court held that the case was not without disputed issues of fact, since defendant raised in its first amended original answer and in its opposition to plaintiff's resubmitted motion the issue of whether the parties had abrogated or amended the collective bargaining contract in the strike settlement negotiations. Concerning the ruling of the court of appeals, this court can look only to the face of the opinion, which reversed and remanded a summary judgment for defendant. One cannot speculate what reasons motivated the court of appeals to remand the cause, rather than to rule in plaintiff's favor, on a motion for summary judgment where any issue of material fact might defeat recovery.

■ Thus the basic issue of fact before the court is whether the parties abrogated, amended, or destroyed the collective bargaining contract orally or in writing with regard to arbitration of the discharge of these employees during the strike settlement negotiations. The court of appeals found that there was an arbitrable grievance involved in the discharge of these employees. The burden is upon defendant to show that the agreement to arbitrate was changed with regard to these employees in subsequent negotiations.

■ If the testimony of defendant's witnesses is taken in its strongest light, the only fact proven is that defendant never changed its position that it would not arbitrate the strike discharges or the failure to reinstate employees charged with strike misconduct. There is nothing in the record though showing that plaintiff expressly gave up any right to arbitration to which it was entitled

under the contract. On the contrary the notes on the negotiations, taken by defendant's witness Perkins, indicate that defendant was not asking plaintiff to agree to anything concerning the procedure by which these strike misconduct cases would be handled. The notes of June 7, 1957, Plaintiff's Exhibit No. 6, read as follows:

"Not asking you to agree to these as part of a settlement. We are not proposing that as a method or settlement of negotiations. We are not agreeing that some whose conduct was not proper have a right to arbitration.

"Grant, 'Persons on strike or working has a right to grievance and arbitration proceedings.'" (Record, p. 100).

At the most there would seem to have been a stalemate on the issue of arbitration of the discharge of these employees. Plaintiff was standing on its right to arbitration under the collective bargaining contract, while defendant was maintaining that said contract was not applicable in this situation. It cannot be contended that one loses his rights if he stands upon them in negotiations but signs an agreement that does not directly deal with them. As the court of appeals stated, " * * * Neither did the settlement memorandum impliedly exclude from arbitration any arbitrable matter in the contract * * *." Lodge 12, supra, 257 F.2d at page 471. Since there does not appear to be any oral or written agreement to exempt these employees from the grievance and arbitration procedure of the collective bargaining contract, it follows that there has been no abrogation, amendment, or destruction of the basic contract and that Articles IV and V thereof apply to the discharge of these employees for alleged strike misconduct.

United Steelworkers, etc. v. Warrior & Gulf Navigation Co., 5 Cir., 1959, 269 F.2d 633, and Independent Petroleum Workers of America, Inc. v. Standard Oil Co., 7 Cir., 1960, 275 F.2d 706, cited by defendant, can be distinguished from the case at bar. Both involved situations in which the union did not have a right to arbitrate the matter in question prior to negotiation of the contract under construction. Thus the courts relied heavily on the negotiating history of the contracts in which the company rejected union proposals that rights be given that the union did not possess at that time. In contrast, plaintiff had the right under the collective bargaining contract to have the discharge of these employees submitted to the grievance and arbitration procedure. The history of the strike settlement negotiations does not indicate that plaintiff expressly gave up a right it already had. Thus the Warrior & Gulf and Standard Oil cases are completely inapposite.

The scope of arbitration, however, may extend only to the issue of reinstatement of the employees and may not include the award of back pay for time lost. Article V, Section 2, of the contract states, " * * * The terms and conditions of settlement shall be within the sole discretion of the Board and the decision of a majority of the Board shall be final and binding on the parties; provided, however, the Board shall have no authority to violate, contravene, disregard or supplement the terms of this agreement." The grievance sought to be arbitrated is the reinstatement of the employees, which may be settled by the board upon terms and conditions not necessarily involving the award of back pay. There is no clear authority in the contract for the award of back pay as a remedy in arbitration. Such a remedy cannot be implied from a grant of authority to arbitrate any difference arising between defendant and any employee "as to the meaning, application or interpretation of the provisions of this Agreement," as stated in Articles IV and V. Refinery Employees' Union, etc. v. Continental Oil Co., D.C.W.D.La. 1958, 160 F.Supp. 723; 5 Cir., 1959, 268 F.2d 447.

Judgment for the plaintiff will be granted, ordering specific performance

of the agreement to arbitrate, limiting the scope of arbitration to the issue of reinstatement of these employees. The clerk will notify counsel to draft and submit judgment accordingly.